TAGGED OPINION



**ORDERED in the Southern District of Florida on December 13, 2023.**

**Scott M. Grossman, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

LEZA SKKY MILBERG                      Case No. 23-16938-SMG

     Debtor,                           Chapter 13

_____/

### ORDER DENYING CONFIRMATION
### OF FIRST AMENDED PLAN, DISMISSING CASE,
### AND DENYING ALL OTHER PENDING MOTIONS AS MOOT

Leza Skky Milberg filed this chapter 13 bankruptcy case the day before a state-court ordered foreclosure sale. This is not unusual. What is unusual is that she wants all the benefits provided by the Bankruptcy Code (including the automatic stay) while she seeks to relitigate in this Court that which the state court has already decided after five years of litigation, but without undertaking the corresponding burdens imposed on debtors in exchange for these benefits. Specifically, she has filed – and is asking the Court to confirm – a first amended chapter 13 plan that does not propose

to make *any* monthly payments to the trustee "unless a claim is proven and Plan further amended."[1] This is not how chapter 13 works, and for the reasons discussed below, confirmation of her amended plan will be denied and her case will be dismissed.

## Background

On July 17, 2023, the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida entered a *Summary Final Judgment of Foreclosure* (the "Foreclosure Judgment") against Ms. Milberg and in favor of U.S. Bank Trust National Association, not in its individual capacity, but solely as Trustee of the Truman 2021 SC9 Title Trust ("U.S. Bank"), with respect to non-homestead real property located at 803 W. Stetson Street, Orlando, FL 32804 (the "Property").[2] The Foreclosure Judgment scheduled a foreclosure sale for August 31, 2023.[3] In the Foreclosure Judgment, the state court ruled that U.S. Bank had standing to foreclose, that it had properly established the amounts due and owing, and that it had rebutted all affirmative defenses pled by Ms. Milberg.[4]

---

[1] ECF No. 67.
[2] ECF No. 49, at 5-16.
[3] *Id.*
[4] *Id.*

On August 30, 2023 – at the time through counsel – Ms. Milberg then filed a voluntary petition under chapter 13 of the Bankruptcy Code.[5] On Part 1, question 5 of her petition, which states: "Where you live," she listed the following address:[6]

6330 N Andrews Avenue No. 273
Fort Lauderdale, FL 33309

But 6330 N. Andrews Avenue is not a residential address. It is the address of a UPS Store with private mailbox services. Section 5 of the petition form contains a second line where a debtor whose mailing address is different from her residential address can list that mailing address. Ms. Milberg did not list anything on that line. On the next line, in response to the question "Why you are choosing *this district* to file for bankruptcy," she checked the box stating "Over the last 180 days before filing this petition, I have lived in this district longer than in any other district."[7]

After requesting and being granted an extension of time to do so,[8] on September 15, 2023, Ms. Milberg filed a chapter 13 plan,[9] as she was required to do by Bankruptcy Code section 1321.[10] Although not required to do so, her then-counsel then filed and served on Ms. Milberg a *Notice to Debtor of Due Date for First and Subsequent Payments under Chapter 13 Plan*.[11] That notice informed her that the plan she signed and filed called for monthly payments of $2,000 per month for months

---

[5] ECF No. 1.
[6] *Id.*
[7] *Id.*
[8] ECF Nos. 10, 11.
[9] ECF No. 12.
[10] 11 U.S.C. § 1321 ("The debtor shall file a plan.").
[11] ECF No. 18.

1 through 6 and $4225 per month for months 7 through 60. The notice further advised Ms. Milberg when the payments were due and where to send them.

Less than two weeks after her plan was filed – and in advance of a scheduled October 19, 2023 hearing[12] to consider confirmation of her plan – Ms. Milberg's counsel moved to withdraw due to "irreconcilable differences . . . making further representation infeasible."[13] That motion was also set for hearing on October 19, 2023.[14] In advance of that hearing – but before the Court even considered the withdrawal motion – Ms. Milberg filed a pro se *Verified Notice of Objection, Status Report, and Motion for Clarification*[15] and *Supplement*[16] thereto, both in violation of Local Rule 9010-1(B)(2), which prohibits a party who has appeared through counsel from appearing or acting on her own behalf until her attorney has withdrawn.[17] At the October 19 hearing, the Court then granted her counsel's motion to withdraw,[18] denied her pro se filings made in violation of Local Rule 9010-1(B)(2)[19] without

---

[12] ECF No. 5.

[13] ECF No. 20.

[14] ECF No. 21.

[15] ECF No. 24.

[16] ECF No. 31.

[17] Local Bankr. R. 9010-1(B)(2):

> **(B) Appearing Without an Attorney.**
>
> **(2) Parties Already Represented by Attorney.** A party who has appeared by attorney cannot thereafter appear or act in his or her own behalf in the case or proceeding–unless the attorney shall first have withdrawn as the attorney pursuant to Local Rule 2091-1–except to file a proof of claim, notices filed under Local Rule 3002.1-1, or a ballot, or to attend and inquire at the meeting of creditors; provided, that the court may in its discretion hear a party in open court, notwithstanding the fact that the party has appeared by or is represented by an attorney.

[18] ECF No. 34. In connection with that motion, Ms. Milberg's counsel waived the right to any fees to be paid through her plan, and agreed they would only retain fees paid before she filed the case. *Id.*

[19] ECF No. 35.

prejudice to her refiling them, and continued the hearing to consider confirmation of her plan to November 15, 2023.[20]

At the November 15 hearing, the Court then considered confirmation of her plan,[21] as well as her motion to reconsider the Court's denial of her pro se motions filed while represented by counsel,[22] and a series of other verified notices, supplements, and motions she filed.[23] In advance of that hearing, U.S. Bank filed an objection to confirmation[24] of her chapter 13 plan. In accordance with her duties under Bankruptcy Code section 1302(b)(2)(B),[25] the trustee (through counsel) appeared at the confirmation hearing, raised a number of deficiencies with Ms. Milberg's plan, recommended against confirmation of the plan, and requested that Ms. Milberg's case be dismissed.

Rather than dismiss her case, though, the Court instead gave Ms. Milberg – who was now proceeding pro se[26] – an opportunity to cure the deficiencies outlined by the trustee that rendered her original plan unconfirmable. The Court required that Ms. Milberg file an amended plan, as well as any objections to any proofs of claim that she disputed, by November 27, 2023, and scheduled a continued confirmation

---

[20] ECF No. 44.

[21] ECF No. 12.

[22] ECF Nos. 37, 42.

[23] ECF Nos. 41, 51, 52, 53, 54.

[24] ECF No. 49. U.S. Bank's objection was largely to preserve its rights in the event Ms. Milberg amended her plan in a manner consistent with her other filings (as she has since done). Based on her original plan as filed, though, U.S. Bank did not object to her proceeding with this "cure and maintain" plan whereby she would "cure" a $142,368.01 arrearage over 60 months, while she "maintains" paying her current contractual payments due to this creditor.

[25] 11 U.S.C. § 1302(b)(2)(B) ("The trustee shall . . . appear and be heard at any hearing that concerns . . . confirmation of a plan").

[26] Although proceeding pro se, Ms. Milberg is a retired attorney.

hearing for December 6, 2023.[27] Ms. Milberg complied with these deadlines by filing
an objection to U.S. Bank's claim number 2,[28] an objection to Lenore Milberg's claims
number 3 and 4,[29] and a first amended plan.[30] The trustee then filed an objection to
confirmation of this amended plan and motion to dismiss the case.[31] Upon
consideration of Ms. Milberg's first amended plan, the record in this case, the
arguments of Ms. Milberg, the trustee, and U.S. Bank at the confirmation hearing,
and for the reasons discussed below, the Court concludes that her first amended plan
cannot be confirmed and that her case must be dismissed.

## <u>Analysis</u>

Debtors frequently file for bankruptcy on the eve of a foreclosure sale. But once
they have done so and have invoked the benefits and protections of the Bankruptcy
Code (including the automatic stay), they then have an obligation to comply with the
Bankruptcy Code's requirements that go along with those benefits and protections.
In chapter 13, this means – among other things – that a debtor must file and propose
a plan to repay her debts and – importantly – she must begin and continue making
monthly plan payments to the trustee. Notwithstanding the requirements of the
Bankruptcy Code, however, Ms. Milberg takes the position that she can have the
benefits of the automatic stay and of the Bankruptcy Court as a forum to resolve her
disputes with her creditors without agreeing to undertake the burdens imposed on

---

[27] ECF No. 58.
[28] ECF No. 65.
[29] ECF No. 66.
[30] ECF No. 67.
[31] ECF No. 71. As noted, U.S. Bank had filed an objection to confirmation of her original plan. (ECF
No. 49). Although it did not file another written objection to confirmation of her amended plan, at the
December 6 hearing U.S. Bank orally joined in the trustee's objection to confirmation.

debtors who voluntarily seek this relief. Specifically, she refuses to make monthly plan payments to the trustee – even though Bankruptcy Code section 1326(a) clearly requires her to do so[32] – unless and until she first obtains a resolution of certain claims against her. In short, she wants a free stay of U.S. Bank's foreclosure sale while she attempts to relitigate in this Court disputes over enforceability of U.S. Bank's note and mortgage on which she has already lost in state court.

In a chapter 13 case, however, a debtor cannot take the position that because she disputes a claim, she doesn't need to make payments on that claim while that dispute is being resolved. To the contrary, the Bankruptcy Code requires her to file a plan that "provide[s] for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan."[33] Unless the Court orders otherwise (and the Court has not here), she must begin making monthly payments not later than 30 days after she filed for bankruptcy, in the amount proposed by the plan to the trustee.[34] A debtor's obligation to make monthly plan payments is the fundamental basis upon which chapter 13 operates.[35] Indeed, the Bankruptcy Code imposes a duty on the trustee to "ensure that the debtor commences making timely payments."[36] And a

---

[32] 11 U.S.C. § 1326(a)(1) ("Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier . . . .").

[33] 11 U.S.C. § 1322(a)(1).

[34] 11 U.S.C. § 1326(a)(1).

[35] *See generally In re Calixto*, 648 B.R. 119, 123 (Bankr. S.D. Fla. 2023) (explaining the differences between chapter 7 and chapter 13 bankruptcy cases and noting that "chapter 13 'allows an income-earning debtor to hold onto her property while she pays her creditors back over a three-to-five-year period' out of her 'regular income.'") (quoting *Harris v. Viegelahn*, 575 U.S. 510, 514 (2015)).

[36] 11 U.S.C. § 1302(b)(5).

debtor's "failure to commence making timely payments" constitutes cause for dismissal of a chapter 13 case.[37]

In addition to making monthly payments, there are several other requirements a debtor must satisfy for the Court to confirm a chapter 13 plan. Specifically, Bankruptcy Code section 1325(a) requires for a plan to be confirmable the Court must find, among other things, that:

- The plan complies with the provisions of chapter 13 and the other applicable provisions of the Bankruptcy Code;[38]

- The plan was proposed in good faith and not by any means forbidden by law;[39]

- The plan provides more value to unsecured creditors than they would receive in a hypothetical chapter 7 liquidation case (the "best interests of creditors test");[40]

- The plan provides specific treatment for secured claims required by the statute (discussed in more detail below);[41]

- The debtor will be able to make all payments under the plan and comply with the plan;[42]

- The debtor acted in good faith in filing her bankruptcy petition;[43] and

- If the trustee objects to confirmation, the plan must provide "all of the debtor's projected disposable income" to be applied to pay unsecured claims under the plan.[44]

As discussed below, Ms. Milberg's first amended plan fails all these requirements, so confirmation must be denied. And because the Court has already given her one

---

[37] 11 U.S.C. § 1307(c)(4).
[38] 11 U.S.C. § 1325(a)(1).
[39] 11 U.S.C. § 1325(a)(3).
[40] 11 U.S.C. § 1325(a)(4).
[41] 11 U.S.C. § 1325(a)(5).
[42] 11 U.S.C. § 1325(a)(6).
[43] 11 U.S.C. § 1325(a)(7).
[44] 11 U.S.C. § 1325(b)(1)(B).

opportunity to amend her plan to comply with the applicable provisions of the Bankruptcy Code, but she has failed to do so and has indicated no intention of doing so, the Court will dismiss her case for cause including lack of good faith in filing the case, and under 11 U.S.C. § 1307(c)(5) for denial of confirmation of her plan.

## I.    The Amended Plan Fails to Satisfy the Requirements for Confirmation.

### A.    The Amended Plan Fails to Provide the Required Treatment for Secured Claims.

To be confirmable with respect to secured claims (like U.S. Bank's), a chapter 13 plan must either (a) be accepted by the holder of the secured claim,[45] (b) provide for the holder of the secured claim to retain its lien and to receive equal monthly payments under the plan with a value on the effective date of the plan of not less than the amount of the claim,[46] or (c) provide that the property will be surrendered to the holder of the secured claim.[47] Those are the only three options for treatment of secured claims under a chapter 13 plan.[48] But Ms. Milberg's first amended plan has not been accepted by U.S. Bank, and it does not provide for surrender of the Property. Thus, to be confirmable, the plan must provide that U.S. Bank will retain its lien and

---

[45] 11 U.S.C. § 1325(a)(5)(A).

[46] 11 U.S.C. § 1325(a)(5)(B).

[47] 11 U.S.C. § 1325(a)(5)(C).

[48] For property that is a debtor's principal residence, however, there is an additional restriction that the plan cannot modify the rights of the holder of a claim secured only by a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 1322(b)(2). For all other secured claims – including the secured claim of U.S. Bank here (because the Property is not Ms. Milberg's principal residence) – a chapter 13 plan may modify the rights of holders of secured claims. This could include seeking a determination that the value of the property is less than the amount of the debt and therefore seeking to "cram down" the secured portion of the claim to the value of the collateral and (although not likely now given the current high-interest rate environment) seeking to lower the interest rate on the debt. *See, e.g., Till v. SCS Credit Corp.*, 541 U.S. 465 (2004).

receive equal monthly payments with a value as of the plan's effective date of not less than the amount of its claim.

Although Ms. Milberg has objected to U.S. Bank's claim, its claim as filed asserts it is owed $276,833.11 pursuant to a note and mortgage dated May 11, 2012, secured by a lien on the Property, and subject to the Foreclosure Judgment entered by the state court on July 17, 2023. As of the date she filed for bankruptcy, U.S. Bank asserts that Ms. Milberg was delinquent in the amount of $141,301.77, which was listed on its proof of claim as the "[a]mount necessary to cure any default as of the date of the petition." The proof of claim also asserted that the annual interest rate when the case was filed was 4.625%.

Under Bankruptcy Code section 502(a), a properly and timely filed proof of claim is deemed allowed, unless a party in interest objects.[49] If a party objects, the Court is then required to determine the amount of the claim and (subject to certain exceptions not applicable here) allow the claim in the amount determined.[50] So while Ms. Milberg has objected to U.S. Bank's claim, that objection has not yet been resolved and under section 502(a), the claim is deemed allowed unless and until the Court determines that it should be disallowed or allowed in a different amount.[51] In

---

[49] 11 U.S.C. § 502(a).

[50] 11 U.S.C. § 502(b).

[51] U.S. Bank has since filed a response to the objection (ECF No. 74) in which it has correctly pointed out that the objection – which was handwritten in nearly-illegible thick marker and stated only "false, not due, late, other [remainder indecipherable]" as the basis for the objection – failed to adequately rebut the prima facie validity of U.S. Bank's proof of claim. *See* Fed. R. Bankr. P. 3001(f) (a properly filed proof of claim constitutes "prima facie evidence of the validity and amount of the claim."). When an objection to a proof of claim is filed, the burden "shifts to the objecting party to come forward with enough substantiations to overcome the claimant's prima facie case." *In re Walston*, 606 F. App'x 543, 546 (11th Cir. 2015) (cleaned up) (quoting *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692,

the meantime, Ms. Milberg must provide for payment of the secured claim in her plan.[52] "A pending objection does not allow a chapter 13 debtor to ignore the Code's requirements for plan treatment of secured claims."[53] While Ms. Milberg certainly has the right to object to a proof of claim,[54] the notice and hearing procedures for resolution of a claim objection mandated by section 502 "are separate and apart from the plan confirmation process, [and] do not authorize debtors to change the amount or reclassify a debt in their chapter 13 plan which was set forth in a properly filed proof of claim."[55]

Moreover, the Bankruptcy Code contemplates – and contains procedures to address – circumstances where a claim is ultimately disallowed or determined to be allowed in an amount less than asserted in a proof of claim. Under Bankruptcy Code section 1326(a)(2), a debtor's monthly plan payments are retained by the trustee until confirmation or denial of confirmation of the plan.[56] If the plan is confirmed, the trustee then distributes funds in accordance with the plan.[57] If the plan is not confirmed, then the trustee must return to the debtor any money she is still holding, after deducting any unpaid administrative expense claim.[58] Even when a debtor

---

701 (5th Cir. 1977)); *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992). Ms. Milberg's handwritten, nearly illegible objection failed to overcome the prima facie validity of U.S. Bank's claim.
[52] *In re Tajima*, 2022 WL 3354006, at *6 (B.A.P. 9th Cir. 2022) ("Where a chapter 13 plan identifies a claim as secured and interest bearing, it must pay it in accordance with § 1325(a)(5)(B).").
[53] *Id.*; *see also In re Jones*, 2023 WL 3636161 (Bankr. S.D.N.Y. 2023) (granting chapter 13 trustee's motion to dismiss a case where the debtors' plan did not provide for payments to a secured creditor whose claim the debtors disputed).
[54] Subject, of course, to Federal Rule of Bankruptcy Procedure 9011.
[55] *In re de la Salle*, 461 B.R. 593, 602 (B.A.P. 9th Cir. 2011).
[56] 11 U.S.C. § 1326(a)(2).
[57] *Id.*
[58] *Id.*

objects to a secured claim, however, no provision of the Bankruptcy Code permits a debtor to withhold making monthly payments pending adjudication of that objection. Rather, the structure of the Bankruptcy Code contemplates the opposite. The debtor must continue to make monthly payments in respect of secured claims as provided in properly filed proofs of claim, pending resolution of that objection.

Putting aside for a moment the merits of her objection to claim, if this Court did hear and resolve the objection in Ms. Milberg's favor – even after confirming a plan that provided for payment to U.S. Bank in accordance with its proof of claim pending resolution of that objection – Ms. Milberg could then request to modify her plan in accordance with Bankruptcy Code section 1329[59] to reduce (or eliminate) payments in respect of the U.S. Bank secured claim, to accelerate her plan and seek an early discharge (because she would have paid in all that she needed to satisfy all allowed claims), or seek some other modification to adjust for the fact that this secured claim has been disallowed. And if it turns out that she has paid in more to the trustee than would be required to satisfy all her obligations under the plan, then she would be entitled to a refund of any excess funds that she paid in.

This is how it works in chapter 13. Were the process how Ms. Milberg would prefer it, the entire chapter 13 system would come to a screeching halt. Every debtor would be incentivized to file a chapter 13 petition, object to every proof of claim filed, get a free stay of all creditors' collection efforts, and not pay a penny while each and

---

[59] 11 U.S.C. § 1329(a) ("At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim . . .").

every claim objected to was adjudicated. No, the chapter 13 process – which is quite efficient and provides tremendous benefits to debtors and their creditors – contemplates exactly the opposite.[60] In exchange for the benefits of bankruptcy (including the automatic stay and the opportunity to receive a discharge), a chapter 13 debtor must file a plan and begin making monthly plan payments at the outset. Once that is underway, the debtor may then object to claims and if an objection is resolved in the debtor's favor, the plan can then be amended or modified accordingly.

Because Ms. Milberg does not wish to comply with these requirements – and instead wants the protection of the automatic stay while she tries to relitigate her disputes with U.S. Bank that were already decided by the state court, without paying a penny toward that (or any other claim or cost of the chapter 13 process) pending that resolution – confirmation of her first amended plan must be denied. Further, because the Court already gave her an opportunity to amend her plan – and explained to her in detail at the November 15 hearing what she needed to do – yet she still proposed a plan that would pay nothing until her objections were resolved, the Court concludes, for the reasons discussed further below, that cause exists to dismiss her case.

---

[60] The Court also notes that chapter 13 is completely voluntary. An involuntary case may not be commenced against a debtor under chapter 13. *See* 11 U.S.C. § 303(a). And a debtor in a chapter 13 case may dismiss her case at any time upon her request, if the case had not been previously converted from a chapter 7, 11, or 12 case. 11 U.S.C. § 1307(b). A chapter 13 debtor may also voluntarily convert her chapter 13 case to a chapter 7 liquidation case at any time. 11 U.S.C. § 1307(a).

B.    <u>This Bankruptcy Case Was Not Filed in Good Faith and the Amended Plan Was Not Proposed in Good Faith.</u>

For the same reasons discussed above, the Court concludes that this case was not filed in good faith, and the amended plan was not proposed in good faith.[61] Good faith is not defined in the Bankruptcy Code, so courts determine good faith "on a case-by-case basis, under a 'totality of the circumstances' test that requires consideration of a broad range of objective and subjective factors."[62] "A primary purpose of the good faith inquiry is to determine under the totality of the circumstances of a case whether there has been an abuse of the provisions, purpose, or spirit of Chapter 13."[63] Here, for all the reasons discussed above – not the least of which is that she seeks to confirm a plan that provides no payments to her creditors while she litigates the validity of their claims – the Court concludes that Ms. Milberg did not propose her plan in good faith. Moreover, because she filed this case to stop a foreclosure sale, but then proposed a plan that would give herself a free stay of that sale to relitigate in this Court state court disputes that have already been resolved after five years of litigation, the Court also concludes that her case was not filed in good faith.

On top of that, although Ms. Milberg voluntarily availed herself of chapter 13, she has challenged the trustee's entitlement to compensation in this case. A chapter

---

[61] *See In re Shelton*, 370 B.R. 861, 869 (Bankr. N.D. Ga. 2007) ("A plan that proposes to pay 0% to creditors when a debtor could pay substantially more is not a plan proposed in good faith."); *In re Melendez*, 597 B.R. 647, 662 (Bankr. D. Colo. 2019) (same); *cf. In re Garduno*, 2012 WL 2402789, at *1 (Bankr. S.D. Fla. 2012) (a chapter 13 plan providing for a bank to receive $0.00 "is the equivalent of leaving the Bank out of the Plan entirely.").

[62] *Matter of Beasley*, 2019 WL 3403361, at *18 (Bankr. N.D. Ala. 2019); (citing *In re Kitchens*, 702 F.2d 885, 888–89 (11th Cir. 1983) (listing eleven non-exclusive factors courts should consider in determining a debtor's good faith)).

[63] *In re Sandberg*, 433 B.R. 837, 845 (Bankr. D. Kan. 2010) (citing *In re Hylton*, 374 B.R. 579, 586 (Bankr. W.D. Va. 2007)).

13 trustee's compensation – unlike in a chapter 7 or chapter 11 case – is set by statute in 28 U.S.C. § 586(e) and is not subject to review or approval by the Bankruptcy Court. If Ms. Milberg has a dispute with the chapter 13 process that has been in place since the enactment of the Bankruptcy Code in 1978, she is free to address that with her elected representatives. But her challenge to the trustee's entitlement to compensation for her services – as set forth clearly in the statute – does not permit her to file a plan that does not provide for any payments at all.[64] This is just another indicia of her lack of good faith and a further basis upon which to deny confirmation of her amended plan. Accordingly, confirmation of her amended plan must also be denied under 11 U.S.C. § 1325(a)(3) (for her amended plan not being proposed in good faith) and (a)(7) (for her petition not having been filed in good faith).

C.    <u>The Amended Plan Fails the Best Interests of Creditors Test</u>.

Another requirement for confirmation is that a chapter 13 plan provide more value to unsecured creditors than they would receive in a hypothetical chapter 7 liquidation.[65] This is called the "best interests of creditors test." To determine whether a plan satisfies the best interests of creditors test, the Court must look at a debtor's non-exempt assets that would be available for liquidation by a chapter 7 trustee to pay her creditors' claims, and determine whether unsecured creditors who are receiving a payment stream from current income under a chapter 13 plan would

---

[64] While under her original plan she did pay $6100 to date (representing three monthly payments of $2,000 each, plus a $100 "test payment") that the trustee is holding, Ms. Milberg asserts she made those payments "with protest." As noted, however, chapter 13 is voluntary. If Ms. Milberg does not wish to comply with its requirements in order to reap its benefits, she is free to dismiss her case or convert it to chapter 7. Her having made three monthly payments "with protest" further supports a finding of lack of good faith.

[65] 11 U.S.C. § 1325(a)(4).

receive more from a liquidation of the debtor's property in chapter 7.[66] Here, Ms. Milberg has disclosed significant non-exempt assets that could be liquidated to pay unsecured creditors in a hypothetical chapter 7 liquidation. These assets include the equity in the Property (which is a vacant rental property), an estimated $50,000 in collectibles,[67] $10,000 in jewelry,[68] and 100% ownership interests in five business entities.[69] Ms. Milberg also claims to have an interest in a $3 billion settlement between the Department of Justice and Wells Fargo as a "whistleblower,"[70] and an apparently highly-contested interest as alleged sole heir to the decedent estates of Simm J. Milberg and Gregg I. Milberg.[71] She also disclosed having an interest in other possible litigation claims – of unknown value – against:

- "US Bancorp and or their affiliates,"
- "JPMorgan Chase NA -New Penn financial, LLC -Bank of America NA,"
- "Noland's Roofing Inc.,"
- "Greenspoon Marder- multiple lawyers,"
- "Akerman Senterfitt- multiple lawyers/lendera [sic],"
- "Legal LLP - multiple lawyers from Federal case filed 6:19-cv-02313-WRB,"
- "State Farm,"
- "Geico Insurance Co.,"
- "DOJ- whistleblower/ creator and victim recovery,"
- "USAA -Ouc - various service fails and overbilling and biz,"
- "Ian Leavengood," and
- "Grandfathers and father's estates for acounts [sic] held as US Bancorp. OUC."[72]

---

[66] *See generally Calixto*, 648 B.R. at 123-24 (discussing the differences between a chapter 13 case and a chapter 7 case).
[67] ECF No. 13, at 5.
[68] *Id.*
[69] *Id.* at 6-7.
[70] *Id.* at 8.
[71] *Id.* at 9.
[72] *Id.* at 10.

She also listed possible refund claims against an unnamed utility company "for repairs costs [sic] of failed line maintenance. Damages from service fails & interruptions 2017 to 2022."[73] Based on all these disclosed assets, the trustee asserts that Ms. Milberg's amended plan – which provides $0.00 for payment to unsecured creditors – fails the best interests of creditors test because these assets would be available for a chapter 7 trustee to liquidate for the benefit of creditors.

In response, Ms. Milberg argues that she need not satisfy the best interests of creditors test in her case because aside from U.S. Bank (which has asserted a secured claim), the only unsecured claims filed in her case were untimely claims filed by Ms. Lenore Milberg, an individual with whom Ms. Leza Milberg has been engaged in extensive litigation over the decedent estates of Simm J. Milberg and Gregg I. Milberg. Because Ms. Leza Milberg has objected to Ms. Lenore Milberg's claims as untimely, should Ms. Leza Milberg prevail on that objection, she argues that there would be no general unsecured creditors in her case with timely filed claims that she would have to pay under her plan. And, therefore, her plan need not satisfy the best interests of creditors test, notwithstanding her substantial assets and the fact that she proposes to pay unsecured creditors $0.00.

The trustee argues that Bankruptcy Code section 1325(a)(4) nevertheless requires Ms. Milberg to propose a plan that pays unsecured creditors 100% of their allowed claims, but that Ms. Milberg can include "contingency language" stating that if successful on her objections, the Court can then later determine whether

---

[73] *Id.*

17

Ms. Milberg is entitled a refund of any amounts paid toward the claims of unsecured creditors. While at the end of the day Ms. Lenore Milberg's claims may in fact be disallowed as untimely,[74] Ms. Leza Milberg's objection to those claims had not yet been adjudicated as of the confirmation hearing. So, at present, those claims are deemed allowed (just like U.S. Bank's claim), and her amended plan must provide for them. Because it provides nothing for them – while in a chapter 7 case unsecured creditors would realize the value of her liquidated non-exempt assets – the amended plan fails the best interests of creditors test. This is another reason to deny confirmation.

D.   The Amended Plan Does Not Apply All of the Debtor's Projected Disposable Income to Pay Allowed Unsecured Claims.

The trustee also asserts that because she has objected to confirmation, under section 1325(b)(1)(B) Ms. Milberg must provide all of her "projected disposable income" to the amended plan. The term "disposable income" has a complex definition set forth in section 1325(b)(2), but for purposes of this case, because Ms. Milberg is not devoting *any* income to her amended plan (she proposes to pay nothing), she clearly fails this test as well. Confirmation must be denied on this basis, too.

E.   The Amended Plan Is Too Speculative.

The trustee also argues that the amended plan fails to satisfy section 1325(a)(6), which requires the Court to find that the debtor will be able to make all payments under the plan and comply with the plan.[75] This provision "requires that

---

[74] *See* Fed. R. Bankr. P. 3002(c), 9006(b)(3).
[75] 11 U.S.C. § 1325(a)(6).

visionary or speculative chapter 13 plans not be approved."[76] The trustee argues that the amended plan improperly includes a number of speculative provisions rendering it unconfirmable, including of course that Ms. Milberg will not provide for any payments unless and until her objections are resolved and she amends her plan accordingly. The Court agrees that such a plan – which provides for no payments at all pending resolution of her objections to claims – is speculative and not confirmable under section 1325(a)(6) as well.

F.    Other Confirmation Deficiencies.

Finally, the trustee asserts other miscellaneous confirmation deficiencies, including Ms. Milberg's continued failure to provide certain information about her assets that the trustee requested.[77] A chapter 13 trustee is charged with many (but not all) of the same duties of a chapter 7 trustee.[78] These duties include the duty to "investigate the financial affairs of the debtor."[79] Likewise, a debtor has a duty to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under" the Bankruptcy Code.[80] By failing to provide requested information about, among other things, her business interests, litigation in Arizona with respect to the Milberg decedent estates, and the various causes of action she claims to have an interest in, Ms. Milberg has failed to comply with her obligations under section

---

[76] *In re Dekom*, 2020 WL 4001044, at *9 (Bankr. N.D. Fla. 2020).

[77] Another deficiency is that her amended plan failed to reflect the earlier payments she did make. Although she claims to have made those payments "with protest," she did in fact make them. For the trustee – who administers thousands of cases – to accurately keep track of the progress of each case, an amended plan must properly account for earlier payments that were made.

[78] 11 U.S.C. § 1302(b)(1); *see also Calixto*, 648 B.R. at 123-24.

[79] 11 U.S.C. §§ 1302(b)(1); 704(a)(4).

[80] 11 U.S.C. § 521(a)(3).

521(a)(3), which is further indicia of her lack of good faith. These additional deficiencies also warrant denial of confirmation.

     G.    *Rooker-Feldman*.

Both the trustee and U.S. Bank also argue that to the extent Ms. Milberg seeks to relitigate in this Court that which the state court has already decided, the *Rooker-Feldman* doctrine bars her from doing so. *Rooker-Feldman* is a "narrow" doctrine that deprives federal district courts of subject matter jurisdiction to hear appeals of state court judgments.[81] As the Supreme Court explained in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*:[82]

> The *Rooker–Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Importantly, the *Rooker-Feldman* doctrine only applies to deprive a federal court of subject matter jurisdiction after state court proceedings have "ended."[83]

Here, the record reflects that the state court entered the Final Judgment on July 17, 2023, and Ms. Milberg admitted at the December 6 hearing that "there were no appeals taken." Thus, if the state court proceedings have indeed "ended," then the *Rooker-Feldman* doctrine would deprive this Court of subject matter jurisdiction to

---

[81] *Behr v. Campbell*, 8 F.4th 1206, 1208 (11th Cir. 2021) ("*Rooker-Feldman* is a narrow jurisdictional doctrine. It simply establishes that a party who loses a case in state court cannot appeal that loss in a federal district court.").

[82] 544 U.S. 280, 284 (2005).

[83] *Nicholson v. Shafe*, 558 F.3d 1266, 1275 (11th Cir. 2009).

adjudicate her objection to U.S. Bank's claim. But even if *Rooker-Feldman* did not apply, as the Eleventh Circuit noted in *Behr v. Campbell*,[84] that does not mean that "other doctrines of preclusion, abstention, or comity" might not still bar Ms. Milberg from relitigating the state court foreclosure action in this Court.[85] This might include res judicata, collateral estoppel, or – specific to bankruptcy cases – 28 U.S.C. § 1334(c)(1) abstention, which could still bar relitigation in this Court of U.S. Bank's foreclosure case. But because the Court will be dismissing this case for the reasons discussed above, it need not determine whether *Rooker-Feldman* would apply here.

## II. Venue May Be Improper.

Given the dearth of information provided by Ms. Milberg, based on the trustee's own investigations, the trustee raised at the December 6 hearing whether venue for this case was even proper in this District. 28 U.S.C. § 1408(1) provides that except with respect to cases ancillary to foreign proceedings, a bankruptcy case may be commenced in a district in which the domicile, residence, principal place of business, or principal assets of the debtor have been located for the 180-day period before filing the case.[86] Here, the trustee has asserted – and Ms. Milberg has not disputed – that the address listed on her bankruptcy petition and schedules is actually the address of a UPS Store. And, as noted, the Property in dispute is in Orlando, Florida (within the Middle District of Florida), where there has been substantial litigation in the state and federal courts there.

---

[84] 8 F.4th 1206.
[85] *Id.* at 1210.
[86] 28 U.S.C. § 1408(1).

There is no indication in the record that Ms. Milberg has or had within the 180 days before she filed for bankruptcy any domicile, residence, principal place of business, or principal assets in the Southern District of Florida. When pressed at the December 6 hearing where her domicile was, she claimed she had none. When asked where she slept the night before, she said at a relative's residence in Palm Beach County. In short, Ms. Milberg could point to no domicile, residence, principal place of business, or principal assets she had in the Southern District of Florida within the 180 days before she filed for bankruptcy that would render venue proper here. But because the Court will dismiss this case on the merits for denial of confirmation and for lack of good faith, any issue over improper venue is moot.[87]

### III.    Cause Exists for Dismissal.

Under Bankruptcy Code section 1307(c), on request of a party in interest and after notice and a hearing,[88] the Court may convert a chapter 13 case to chapter 7 or dismiss a chapter 13 case, whichever is in the best interests of creditors and the

---

[87] The issue of venue was raised for the first time at the December 6 hearing. While under Federal Rule of Bankruptcy Procedure 1014(a)(2), the Court on its own motion or the timely motion of a party in interest can dismiss a bankruptcy case for improper venue, it can only do so after hearing on notice to the debtor. Fed. R. Bankr. P. 1014(a)(2). Here, because Ms. Milberg did not have prior notice that her case might also be dismissed for improper venue, the Court will not rely on improper venue in and of itself as a basis for dismissal. But her having filed this case in an apparently improper venue may be considered another indicia of her lack of good faith in filing her petition.

[88] Under 11 U.S.C. § 102(1)(A), "after notice and a hearing" or similar phrase "means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." Here, the *Notice of Chapter 13 Bankruptcy Case* issued by the Clerk of Court upon filing the case gave her clear notice that "[t]he case may also be dismissed or converted at the scheduled confirmation hearing if the court denies confirmation of the pending plan under 11 U.S.C. § 1325 and denies a request made for additional time for filing another plan or a modification of a plan." (ECF No. 5.) Ms. Milberg of course also had notice of (ECF No. 58) and attended the December 6 hearing to consider confirmation of her plan. She also had notice of the trustee's objection to confirmation and request for dismissal of the case. (ECF No. 71.)

estate, for "cause."[89] "Cause" for dismissal includes "denial of confirmation of a plan under section 1325 of [the Bankruptcy Code] and denial of a request made for additional time for filing another plan or a modification of a plan."[90] Cause for dismissal also includes lack of good faith in filing the petition.[91] Here, for the reasons discussed in detail above, cause for dismissal clearly exists because the Court is denying confirmation of her amended plan.[92]

Further, at the November 15 hearing on confirmation of her original plan the trustee, U.S. Bank, and the Court all explained to Ms. Milberg what deficiencies she needed to remedy to confirm that plan. Rather than address those issues, she instead filed her amended plan that provided for no payments at all. In addition to being noncompliant with Bankruptcy Code section 1325 for the reasons discussed in detail above, this amended plan in and of itself also demonstrates her lack of good faith and is therefore additional cause for dismissal.

Likewise, she was already given one opportunity to amend her plan, and at the December 6 hearing she did not make any request for additional time to file another plan. Rather, she stood on her position that the amended plan she proposed – which provides for $0.00 in monthly payments – is confirmable. It is not, and the Court will not give her any further opportunity to try to propose a confirmable plan. Accordingly,

---

[89] 11 U.S.C. § 1307(c).

[90] 11 U.S.C. § 1307(c)(5).

[91] *See In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986); *In re McGovern*, 297 B.R. 650, 655–56 (S.D. Fla. 2003); *In re Farber*, 355 B.R. 362, 366 (Bankr. S.D. Fla. 2006); *In re Bandini*, 165 B.R. 317, 321 (Bankr. S.D. Fla. 1994); *In re Gros*, 173 B.R. 774, 776-77 (Bankr. M.D. Fla. 1994); *In re Alt*, 305 F.3d 413, 418 (6th Cir. 2002); *In re Banks,* 267 F.3d 875, 876 (8th Cir. 2001); *In re Lilley,* 91 F.3d 491, 496 (3d Cir. 1996); *In re Eisen,* 14 F.3d 469, 470 (9th Cir. 1994); *In re Gier,* 986 F.2d 1326, 1329 (10th Cir. 1993); *In re Love,* 957 F.2d 1350, 1362 (7th Cir. 1992).

[92] *See* 11 U.S.C. § 1307(c)(5).

the Court will dismiss her case for cause, including under 11 U.S.C. § 1307(c)(5) and for lack of good faith.

## Conclusion

For the reasons discussed above, it is **ORDERED** that:

1.      Confirmation of Ms. Milberg's First Amended Chapter 13 Plan[93] is **DENIED**.

2.      This case is **DISMISSED**.

3.      All pending motions are **DENIED AS MOOT**.

4.      Before this case can be administratively closed, the trustee must file a final report.

### # # #

Copies furnished to all interested parties by the Clerk of Court.

---

[93] ECF No. 67.